UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH DUFFANY, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 16-11888-IT |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | * |
| Defendant. | * |

MEMORANDUM & ORDER

September 15, 2017

TALWANI, D.J.

I. Introduction

Plaintiff Joseph Duffany ("Duffany") seeks judicial review of a final decision by the Acting Commissioner of Social Security Nancy Berryhill ("Commissioner") denying Duffany's Title II application for Disability Insurance Benefits ("DIB") and Title XVI application for Supplemental Security Income ("SSI"). Mot. to Reverse [#14]. The Commissioner has filed a Motion for Order Affirming the Decision of the Commissioner [#20] [hereinafter "Mot. to Affirm"]. Both parties submitted additional papers. Pl.'s Reply Mem. [#22] [hereinafter "Pl.s' Rep."]; Def.'s Sur-Reply [#23].

For the following reasons, both motions are ALLOWED IN PART. This matter is REMANDED for further consideration consistent with this order. The Commissioner's decision is otherwise AFFIRMED.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current Acting Commissioner Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit.

II. <u>Background and Procedural History</u>

Neither party contests the procedural history as recounted in the opinion under review, summarized as follows.[2]

*A. Prior Proceedings*

Prior to the application at issue in the present appeal, Duffany filed two sets of applications for Disability Insurance Benefits (Title II) and Supplemental Security Income (Title XVI) alleging a disability beginning on July 9, 2011. (R. 166-167).

The first set of applications were filed on October 5, 2011, and were denied on December 5, 2011. (R. 166). There was no appeal.

The second set of applications were filed on March 26, 2012, and were denied on August 10, 2012. (R. 166). Duffany sought reconsideration, and the applications were again denied on February 21, 2013 (hereinafter, the "February 2013 Denial"). (R. 167). There was no further appeal.

*B. Current Proceedings*

Duffany filed a third set of applications on July 9, 2013. (R. 167). The applications were denied on August 19, 2013, and again upon reconsideration on January 27, 2014. (R. 167). Duffany requested a hearing, and the Administrative Law Judge ("ALJ") held a video hearing on May 21, 2015, and rendered a decision on June 26, 2015. (R. 163-184). Despite noticing and holding a hearing, the ALJ's decision stated that the request for a hearing as to the application for Disability Insurance Benefits was dismissed. (R. 168). The ALJ also denied the application for Social Security Income, finding Duffany not disabled. The Appeals Council declined to review either the ALJ's "dismissal action or the decision" on July 22, 2016, (R. 1-4), and Duffany

---

[2] The decision under review is found from pages 163 through 184 of the <u>Social Security Administrative Record</u> [#13], hereinafter cited as ("R. [page no.]").

timely commenced the instant action seeking review of the denial of the third set of applications.

III. Disability Insurance Benefits

A. *The ALJ's Decision*

Disability Insurance Benefits are available only to claimants who become disabled while they are "insured." 42 U.S.C. § 423(a)(1)(A). The ALJ found (and the parties do not dispute) that Duffany was last insured for Disability Insurance Benefits on December 31, 2012. (R. 166). The ALJ determined that the February 2013 Denial constituted a final decision. The ALJ further noted that, while Duffany was thus barred from recovering benefits for months prior to February 2013, he could recover Disability Insurance Benefits if he submitted new and material evidence establishing a continuous disability since on or before December 31, 2012, Duffany's last day insured. The ALJ determined, however, that Duffany presented no new evidence that was both unavailable at the previous determination *and* pertinent to the period (on or before December 31, 2012) during which Duffany was insured, which would have counseled against application of *res judicata*. (R. 168). The ALJ thus dismissed the request for a hearing on the Disability Insurance Benefits application as already having been adjudicated.

B. *Analysis*

Duffany principally contends that the ALJ's *sua sponte* application of *res judicata*, without notice, worked to provide less process than the Fifth Amendment guarantees. Mot. to Reverse [#14] 4-7. He contends that had he and his attorney been provided notice of the ALJ's potential application of *res judicata*, they could have mounted a defense, and that the ALJ failed to produce the file on which *res judicata* would rely. Id. Further, Duffany contends that the ALJ added exhibits to the file after the hearing, depriving Duffany the ability to examine and confront the full body of evidence on which the ALJ would render a decision. Id.

3

The court has subject matter jurisdiction to review Duffany's claim based on the lack of notice to Duffany as to the potential application of *res judicata*. At bottom, persons are due meaningful notice of potential administrative deprivations of property. See Mathews v. Eldridge, 424 U.S. 319, 333 (1979). Here, neither the initial denial of Duffany's Disability Insurance Benefits application nor the denial upon reconsideration was based on application of *res judicata*, but on findings that Duffany was not sufficiently disabled. (R. 352-355) (initial denial); (R. 358-360) (denial upon reconsideration). Duffany sought and was afforded a hearing, and the Notice of Hearing also did not identify the potential application of *res judicata*, despite the mandate that the notice specify "issues to be decided" in the case. See 20 C.F.R. § 404.938; (R. 392-397).[3]

At the hearing, where Duffany's attorney might have been able to present argument against application of *res judicata,* the ALJ still did not reference any potentially preclusive effect of the prior unfavorable decisions. (R. 210-252). The *sua sponte* application of *res judicata* in the ALJ's decision therefore appears violative of the letter and spirit of the Social Security regulations that effectuate Eldridge's required notice by indicating (i) that the issues before an ALJ at a hearing are those "brought out in the initial, reconsidered or revised determination that were not decided" in the claimant's favor (here: disability); (ii) that an ALJ "may consider a new issue at the hearing if he or she notifies" the claimant; and (iii) that the ALJ "shall notify" the claimant if the ALJ "will consider any new issue." See 20 C.F.R. § 404.946

---

[3] The Commissioner argues the Notice of Hearing did notify Plaintiff of potential application of *res judicata* because it "made plain that the ALJ was addressing entitlement to [Disability Insurance Benefits] and whether [Duffany] was disabled before his date last insured." Mot. to Affirm [#21] 12. This misses the mark. The question is not whether the ALJ notified Duffany that the ALJ was addressing entitlement to benefits; this is, of course, what every such hearing is ultimately about. The question here is whether the Notice of Hearing specified the issues to be decided as part of that inquiry. The Notice of Hearing lists some of these specific issues, but does not include *res judicata*.

(emphasis added). In short: the regulations governing the ALJ promised Duffany notice which he was not given.

The Commissioner attempts to distinguish two authorities cited by Duffany's counsel in favor of the above analysis. In Lindholm v. Astrue, 2012 WL 527856, at *8 (D. Mass. Feb. 16, 2012), the plaintiff objected to the issues listed in the Notice of Hearing. At the hearing, in response to these objections, the ALJ discussed the issues raised in the objections rather than set a new hearing with notice of intent to discuss those issues. Id. Plaintiff and her counsel were not prepared to discuss these issues, and asserted such to the ALJ. Id. The ALJ nonetheless continued on, resulting in the court finding that the plaintiff did not receive "full and fair opportunity to argue her case . . . ." Id. The Commissioner argues that this case is distinguishable because the ALJ did not switch topics unexpectedly at the hearing. But here, in switching topics after the hearing, without warning or opportunity for any rebuttal (even if unprepared rebuttal), the ALJ afforded Duffany and his counsel even less notice than was afforded the plaintiff in Lindholm.

This same analysis attends Christensen v. Apfel, 1999 WL 33595519, at *5 (M.D. Fla. Nov. 5, 1999), where again the ALJ raised a new issue at the hearing without prior notice as required by 20 C.F.R. § 404.946. There, the court determined it was insufficient that the ALJ gave warning of dispositive issues contemporaneously with the opportunity to address them; here no notice was given at all.

Finally, the court's decision in Harris v. Callahan, 11 F. Supp. 2d 880, 884-85 (E.D. Tex. 1998)—which found failure to notice potential application of *res judicata* to demand a remand—is not sufficiently distinguished simply by dint of that plaintiff's *pro se* status. The requirements set forth at 20 C.F.R. § 404.946 do not distinguish between represented and *pro se* claimants, and

5

the Harris court's decision does not appear conditioned (instead of merely informed) by concerns for *pro se* claimants.[4]

The court takes no position on the ultimate propriety of applying administrative *res judicata* in this case, and instead determines at this juncture only that Duffany is due a right to present his argument against *res judicata* to the ALJ. This matter is therefore REMANDED for further determination of Duffany's Title II application after allowing him opportunity to contest the application of *res judicata*.

IV. Supplemental Security Income

   A. *Standard of Review*

The ALJ denied Duffany's Title XVI application for Supplemental Security Income upon finding he was not disabled. "A person qualifies as disabled, and thereby eligible for such benefits, 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" Barnhart v. Thomas, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. § 423(d)(2)(A)).

---

[4] The Commissioner asserts that the ALJ could have dismissed on *res judicata* grounds without granting a hearing at all, nullifying any constitutional concerns about deficiently noticing what issues would be considered at a hearing. Mot. to Affirm [#21] 10-11 (citing 20 C.F.R. § 407.957(c) for this proposition). But the ALJ did not take this route, and instead, set the matter for hearing, considered evidence offered at the hearing in resolving the *res judicata* issue, all without giving notice that *res judicata* was at issue. The Commissioner's argument would also have more force if Duffany had been given notice of the right to request that the ALJ vacate the dismissal pursuant to 20 C.F.R. § 404.960, pursuant to which he would have had the opportunity to argue against the application of *res judicata* to the ALJ. Instead, he was advised only of review by the Appeals Council. (R. 163). See Kapp v. Schweiker, 556 F. Supp. 16, 21 (N.D. Ca. 1981) (". . . plaintiff appears to have been denied an opportunity to effectively prepare and to present argument to the ALJ regarding the application of the res judicata doctrine to his claim. The only option he was given was a review by the Appeals Council, which given a limited form of review (20 CFR 404.970), refused to examine the ALJ's decision denying plaintiff's request for a hearing. Plaintiff was effectively denied any real review of his request for a hearing or of the decision to apply res judicata . . . ." ).

Decisions so rendered must be upheld "unless the [Commissioner] has committed a legal or factual error in evaluating a particular claim." Manso-Pizarro v. Sec'y Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quotation marks and citation omitted). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), and must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriquez v. Sec'y Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

The Social Security Administration has promulgated regulations establishing a five-step sequential evaluation process to determine disability. See 20 C.F.R. § 404.1520(a)(4). At step one, the agency considers work activity, and whether the claimant is doing substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the agency looks to the medical severity of the impairment, and will only proceed if an impairment or a combination of impairments are found "severe." 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the agency looks to whether impairments meet or equal the list of impairments presumed severe enough to render one disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 404 Subpt. P, App. 1. If the impairment does not so qualify, at step four the agency looks to the claimant's Residual Functional Capacity, that is, her ability to work despite her impairment, and whether the claimant can perform her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). The burden of proof is on the claimant for steps one through four. At the fifth step, the agency considers vocational factors (age, education and past work experience) to determine whether, given the claimant's residual functional capacity, the claimant is capable of performing other jobs existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(v); see also Barnhart,

540 U.S. at 24-25. It is the government's burden to prove that there are sufficient jobs in the economy that the claimant can perform. Tavarez v. Comm'r of Social Security, 138 Fed. Appx. 327, 329 (1st Cir. 2005) (per curiam).

    B. *The ALJ's Decision*

The ALJ proceeded along the five-step evaluation as follows. (R. 171-184). First, he determined Duffany had not engaged in substantial gainful activity. (R. 171). At step two, he determined that Duffany suffered from the following "severe" impairments:

- Status post right shoulder subacromial decompression and distal clavicle resection;
- Bilateral high-frequency hearing loss with tinnitus;
- Major depressive disorder; and
- Generalized anxiety disorder.

(R. 171). The ALJ did not find Duffany's larynx cancer to be severe "because it did not last and is not expected to last 12 months." (R. 171) (citing 20 C.F.R. 404.1520(a)(4)(ii)). The ALJ then surveyed a variety of other afflictions but determined them all either medically non-determinable or non-severe.

At step three, after review of the listed impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ determined that Duffany's impairments were insufficiently severe to presume Duffany disabled without further assessment. (R. 172-173). At step four, the ALJ determined Duffany retained a Residual Functional Capacity to perform "light work" if limited to no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and if able to avoid concentrated exposure to noise in a work setting. (R. 174). Having determined this Residual Functional Capacity did not permit Duffany to perform his past relevant work, the ALJ solicited the opinion of a vocational expert and determined that Duffany is capable of

8

performing jobs that exist in significant numbers in the national economy—namely, cashier, electronics worker, and assembler—rendering him not disabled. (R. 182-183). The claim was accordingly denied.

   *C. Analysis*

Duffany lodges three objections to this above analysis, and assigns an additional error to the Appeals Council which declined to review the ALJ decision. As to the five-step analysis, Duffany first claims that his larynx cancer was both "severe" at step two, and sufficiently severe at step three to require that he be presumed disabled. Mot. to Reverse [#14] 8. His argument as to the Appeals Council centers on its affirmance of the step two analysis in light of what he claims to be additional evidence.

Duffany secondly claims the ALJ erred in assessing the mental aspect of his Residual Functional Capacity, arguing that evidence more recent than that on which the ALJ relied indicated more severe impairments in concentration, persistence and pace. Mot to Reverse [#14] 9.

Duffany's final argument is that the ALJ failed to obtain any medical evaluation of Duffany's "severe" hearing impairment, and instead made an impermissible lay assessment of how that limitation affected Duffany's physical Residual Functional Capacity, and then insufficiently relayed that limitation to the vocational expert at the hearing. Mot. to Reverse [#14] 10-11.

The court takes these arguments in turn.

   *i. Larynx Cancer*

The ALJ determined Duffany's larynx cancer to not be "severe" at step two because it failed to meet the duration requirement in 20 C.F.R. § 416.920(a)(4)(ii). This "duration

9

requirement" is defined as requiring non-lethal impairments to "have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. Duffany argues that because the record demonstrates (as the ALJ notes) that Duffany first began experiencing symptoms of his cancer in September 2013, and continued to experience effects of the cancer through the date of the hearing "and beyond," a finding that the 12-month requirement was not met is facially incorrect. Mot. to Reverse [#14] 7-8.

Duffany's argument mischaracterizes the required showing. The "impairment" that must have lasted or been expected to last for at least twelve continuous months is a "severe impairment," defined as one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). See Dias v. Colvin, 52 F. Supp. 3d 270, 278 (D. Mass. 2014) ("A severe impairment must meet the durational requirement of 12 months and 'significantly limit[ ] your physical or mental ability to do basic work activities.'") (citing 20 C.F.R. §§ 416.920(c), 416.909) (emphasis added); Grady v. Astrue, 894 F. Supp. 2d 131, 141 (D. Mass. 2012) ("It is not enough for Plaintiff to be diagnosed with certain impairments: Plaintiff must provide evidence that these impairments 'significantly limit[ ] [his] physical or mental ability to do basic work activities.'") (citing parallel Title II regulation). It is therefore insufficient to identify certain impairments that may span 12 months; one must identify a 12-month range of significant limitations of physical or mental abilities to do basic work activities.

Duffany has not demonstrated any reversible error in the ALJ's determination that Duffany's cancer did not cause limitations that were, or were expected to be, "severe" for a continuous 12-month period. The ALJ acknowledged that Duffany began experiencing symptoms of his larynx cancer beginning in September 2013, but did not find (and indeed,

10

Duffany does not argue) that Duffany was significantly limited by his cancer beginning in September 2013. The ALJ instead relied on the reports from two of Duffany's doctors—Drs. Douglas Mann and Robert McAnaw—that suggested the cancer was only "severe" for approximately 6 weeks, during or related to the radiation therapy treatment period, and that suggested an optimistic prognosis thereafter.

Specifically, on December 15, 2014, Dr. Mann indicated that Duffany would require radiation therapy for six weeks and that, as a result, he would miss work for approximately one hour each day during that treatment period. (R. 770, 773). Similarly, Dr. McAnaw indicated on January 5, 2015, that Duffany's cancer would be incapacitating until at least February 28, 2015—that is, approximately 7.5 weeks later. (R. 790). These reports constitute "substantial evidence" in support of the ALJ's determination that the 12-month duration requirement was not met, especially viewed against Duffany's failure to identity contrary evidence before the ALJ that would support a different finding.

Duffany points to information arising after the ALJ's June 26, 2015, decision, but such later information necessarily was not before the ALJ. And while the Appeals Council acknowledged there being additional medical records spanning from July 14, 2015, through December 16, 2015, it cited 20 C.F.R. § 416.1470(c), which provides that the Appeals Council will only consider evidence relating to the period of time at issue in the ALJ decision under review. (R. 2).

This court cannot consider evidence not before the ALJ. Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001) ("To weigh the new evidence as if it were before the ALJ would be, as one court fairly observed, a very peculiar enterprise, and (to us) one that distorts analysis.") (emphasis, citation and quotations omitted).

This court can, however, "order additional evidence to be taken before the Commissioner of Social Security . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (sentence six); see Mills, 244 F.3d at 5 ("The courts already have the statutory authority to remand for further proceedings where new evidence is presented after the ALJ decision if the evidence is material and good cause is shown for the failure to present it on a timely basis.") (emphasis omitted); Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 139 (1st Cir. 1987) ("Under 42 U.S.C. § 405(g), remand is appropriate only where the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing."); Mazonson v. Colvin, 2016 WL 6776280, *6 (D. Mass. Nov. 15, 2016) ("If a claimant presents new evidence to the court that was not contained within the administrative record, the court may not consider it. 'If additional evidence is to be considered, it must be by way of remand [ ]' pursuant to sentence six of Section 405(g).") (quoting Hamilton v. Sec'y Health & Human Servs., 961 F.2d 1495, 1503 (10th Cir. 1992)).

Here, the additional evidence presented to the court suggests that the ALJ's prognosis that the impairment would not last for twelve continuous months was incorrect. Instead, the additional evidence suggests that at least through December 2015, Duffany's cancer had not abated and may, instead, have worsened. See, e.g., (R. 24) (September 16, 2015, indication by Dr. Kannabiran that Duffany lacks "mobility in the right true vocal cord"); (R. 34) (December 16, 2015, indication by Dr. Jalisi that Duffany has "worsening dysphonia" following radiation therapy, and that following a October 29, 2015 surgery, Duffany "has a recurrent tumor involving both cords anteriorly and extending to subglottis," all of which may demand a "total

12

laryngectomy."); (R. 30) (December 23, 2015, indication by Dr. Grillione that, following a October 29, 2015, surgery, Duffany remains diagnosed with "right true vocal cord cancer," that Duffany has a "recurrent tumor," and that Duffany may be recommended to undergo a "total laryngectomy if biopsies show recurrence of cancer."). This evidence is "new" as it arose following the ALJ's decision, which also supports good cause for its not having been presented to the ALJ in the first instance. And Duffany did attempt to present the information to the Appeals Council. See Bilodeau v. Shalala, 856 F. Supp. 18, 20-21 (D. Mass. 1994) ("[It] is sufficient [for the good cause requirement] if the evidence proffered by plaintiff was unavailable at the time of the Secretary's administrative proceedings. . . . [The] results of the MRI performed on [the claimant's] right shoulder were not available until roughly six months after the decision of the ALJ and after [the claimant] had already requested a review. Moreover, [the claimant's] attempted to submit this new evidence to the Appeals Council during its deliberations."). As to materiality, the recent assessments of Duffany's cancer may have the effect of altering the ALJ's assessment of that cancer's severity, and as such may provide cause to alter the ALJ's conclusions.

Further, in light of this court's remand to the ALJ for further consideration of issues pertaining to *res judicata*, this court finds ends of administrative efficiency best served by the ALJ's taking of new evidence concerning Duffany's cancer rather than by Duffany's re-filing an application anew while the *res judicata* matter proceeds by itself on remand. Cf. Evangelista, 826 F.2d at 141 ("Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided—to the end that the process not bog down and unduly impede the timely resolution of social security appeals.").

Accordingly, the court further REMANDS this matter for further evidence to be

presented and received concerning Duffany's larynx cancer and for consideration of Duffany's application in light of said evidence, to includes that evidence's impact on the step-two finding of the cancer's non-severity and a step-three evaluation of the cancer's sufficiency to meet a listing.

*ii. Mental Residual Functional Capacity*

In the step four formulation of Duffany's Residual Functional Capacity, the ALJ determined that Duffany "has no more than moderate limitations in concentration, persistence and pace."[5] (R. 173). Duffany asserts the ALJ erroneously relied on older state agency evaluations to the diminishment of newer evidence demonstrating more severe impairments in these categories. Mot. to Reverse [#14] 9-10. As support, Duffany points to the May 11, 2015, Mental Residual Functional Capacity Questionnaire filled out by Nicholas LeRoy,[6] which opines on mental limitations at least arguably more severe than the ALJ's findings. (R. 1239-1243). The ALJ considered Mr. LeRoy's opinion, but "gave it little weight, as it is inconsistent with the claimant's positive response to conservative treatment." (R. 181).

Mr. LeRoy's May 11, 2015, assessment is indeed more recent than the opinions to which the ALJ afforded "great" weight—Dr. Patricia Duffy's July 31, 2013, evaluation (R. 267-279)

---

[5] "Concentration, persistence and pace" fits into the overall evaluation as follows. In the listings of disorders presumed severe enough to render a claimant disabled—found at 20 C.F.R. Part 404, Subpart P, Appendix 1— mental disorders in particular are broken into eleven categories. The ALJ evaluated Duffany's case against two of those categories: 12.04 ("depressive, bipolar and related disorders") and 12.06 ("anxiety and obsessive-compulsive disorders"). (R. 172). In assessing either of these categories, an ALJ is to evaluate information under three paragraphs—dubbed Paragraphs A, B, and C—to determine whether, as required, the mental disorder meets the requirements of either Paragraphs A and B, or Paragraphs A and C. A claimant's ability to "concentrate, persist, and maintain pace" is a criterion found in Paragraph B.

[6] The ALJ refers to Nicholas LeRoy as a doctor, (R. 181), while Duffany refers to him initially as "Dr. LeRoy" and as a "treating physician," Motion to Reverse [#14] 9, and later as a "treating therapist." Reply Mem. [#22] 6. From the record, it appears Nicholas LeRoy is a therapist at South Bay Medical Center, and holds a M. Ed. (R. 1183-1193, 1235, 1243).

14

and Dr. Joan Kellerman's December 31, 2013, opinions (R. 303, 307)—and courts do discourage placing heavier weight on opinions formed on sparse and historic records to the detriment of opinions based on proximal and fuller ones. See, e.g., Alcantara v. Astrue, 257 Fed. Appx. 333, *1 (1st Cir. Dec 12, 2007). The court further notes that where the ALJ states that Duffany's mood improves with psychiatric treatment, the ALJ cites to Exhibits 5F p.4, 6F pp. 7, 10, 17, and 80, and 15F p. 12, all of which arise in 2013—two years prior to the ALJ's decision and at the outset of Duffany's cancer. But neither the record nor the case law support finding that the ALJ's decision was not based on "substantial evidence." Mr. LeRoy's lack of medical credentials undermine any claim to accord his opinion weight as a treating physician, and his assessment is largely comprised of his repeating Duffany's self-reporting of disability. Moreover, treating records from the same period show a more moderate assessment. (R. 1189-1192). As a result, Mr. LeRoy's report at most demonstrates that opinions may have differed as to Duffany's overall mental health; but resolutions of such conflicts belong to the ALJ, rather than this court. See Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Moreover, Duffany has not demonstrated either (i) that the opinions of Drs. Duffy and Kellerman were not supported by the record before them or were based in faulty logic or reasoning; or (ii) refute the ALJ's determination that Mr. LeRoy's opinion was inconsistent with Duffany's responses to treatment.

In sum, Duffany has not demonstrated why the ALJ's opinion as to mental limitations manifested a "legal or factual error" when compared with the record. See Manso-Pizarro, 76 F.3d at 16. There is therefore no basis here to disturb the decision.

### iii. Physical Residual Functional Capacity

Duffany's final contention is that the ALJ committed reversible error in his treatment of

Duffany's hearing loss and tinnitus. Mot. to Reverse [#14] 10-11. At step two, the ALJ determined that Duffany suffered from "bilateral high-frequency hearing loss with tinnitus," and concluded this to be a "severe" impairment. (R. 171). The ALJ included in Duffany's limitations "a need to avoid concentrated exposure to noise in a work setting to address the claimant [sic] hearing loss." (R. 180).

Duffany claims first that the ALJ erred in making a lay assessment of the limitations stemming from his hearing loss and tinnitus, citing Manso-Pizarro, 76 F.3d at 17-18. In that case, the First Circuit explained that "where the medical evidence shows relatively little physical impairment," or where "the extent of functional loss, and its effect on job performance, would be apparent even to a lay person," "an ALJ can permissibly render a commonsense judgment about functional capacity even without a physician's assessment." Id. (quoting Santiago v. Sec'y of Health and Human Servs., 944 F.2d 1, 7 (1st Cir. 1991)). In other circumstances, however, with few exceptions, "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." Id.

In the step four formulation of Duffany's Residual Functional Capacity, the ALJ discounted Duffany's testimony with regard to his hearing loss, noting that the medical records show that Duffany "is able to converse without aids" and that Duffany "did not have significant difficulty hearing questions and responding to them at the hearing." (R. 182). In reviewing the medical records, the ALJ observed that on October 6, 2004, Duffany underwent a hearing test and was found to "to have high frequency hearing loss, slightly worse on the left side, and tinnitus" (R. 174); that on September 11, 2013, "[Duffany] was noted to have bilateral tinnitus caused by sensorineural hearing loss" (R. 177); that on October 3, 2013, Duffany was fitted for hearing aids (R. 177); and that on October 10, 2013, Duffany "reported a very successful trial

16

with the hearings aids and asked to keep them for another week while he worked on finances to be able to afford to purchase them." (R. 177). The underlying records regarding the tinnitus and hearing loss note further that the "the ringing will overpower a conversation" and is "audible over moderate noise" and that the hearing loss was evaluated "by audio" the previous year, (R. 792), and that Duffany has "TV problems," "cannot hear people speaking behind" him, that "conversations are not clearly heard," that "overall ringing in ears [is] very disturbing," and that Duffany experiences "confusion while communicating with other people as [he is] unable to clearly hear what is being said." (R. 803). The ALJ did not seek a physician's assessment of these limitations, but concluded that there was a hearing-related impairment in Duffany's Residual Functional Capacity, articulated by the ALJ as having to avoid "concentrated exposure to noise."

The Commissioner argues first that the state agency physician did address Duffany's claim that he suffered from tinnitus, spelled incorrectly in various reports as "tenititis." But while these reports show that Duffany reported his tinnitus, the reports do not show that the impairment was reviewed by the state physicians. (R. 267) (listing Duffany's allegations of impairments); (R. 271) (report of Duffany's call); (R. 271-272) (no listing by physicians of hearing loss or tinnitus as an impairment); (R. 287-288) (no listing by physicians of hearing loss or tinnitus as an impairment); (R. 296) (listing Duffany's allegations of impairments); (R. 302) (no listing by physicians of hearing loss or tinnitus as an impairment).

The Commissioner argues next that the ALJ's determination was permissible even if the state agency physicians did not evaluate Duffany's hearing loss and tinnitus, because the medical evidence shows relatively little physical impairment, and because the ALJ was permitted to make a common-sense judgment regarding the effects of the impairment where the evidence in the

17

record failed to show limitations due to hearing loss or tinnitus. The difficulty with this argument is that the ALJ did not conclude that there was little impairment or limitations. Instead, he correctly found that there was a severe impairment. He then formulated his own limitation, as "a need to avoid concentrated exposure to noise in a work setting to address the claimant [sic] hearing loss." (R. 180). This determination, however, is beyond that properly conducted by a lay person.

Accordingly, the court further REMANDS this matter for further evidence to be presented and received concerning Duffany's Residual Functional Capacity with regard to the impairment caused by his hearing loss and tinnitus.[7]

V. Conclusion

In accordance with the foregoing, this matter is REMANDED for further consideration of Duffany's Title II claim after allowing Duffany opportunity to contest *res judicata*, and for further consideration of Duffany's Title XVI claim after receipt and consideration of additional evidence concerning Duffany's cancer and Duffany's hearing loss and tinnitus. The Commissioner's decision is otherwise AFFIRMED.

IT IS SO ORDERED.

September 15, 2017 /s/ Indira Talwani
United States District Judge

---

[7] Duffany argues further that the ALJ erroneously articulated the limitation as having to avoid "concentrated exposure to noise," a term not used in vocational assessments. This argument is moot in light of the remand requiring further assessment of his limitation.

In his Reply Mem. [#22] 5, Duffany argues further that the ALJ erred in failing to "mention in the RFC . . . any impediments related to speaking." This argument is identified for the first time in the reply brief and is given a single sentence of argument, without citation, and is thus waived.